UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

DAVID JOSEPH KENNEDY and
BECKAH FAYE KENNEDY,                                    Case No.: 3:12-bk-5628-JAF
                                                                            Chapter 7
        Debtors.

_____/

## MEMORANDUM OPINION AND ORDER GRANTING DEBTORS' MOTION TO VALUE REAL PROPERTY AND TO STRIP MORTGAGE LIEN OF SUNTRUST BANK, N.A.

This case came before the Court upon the Debtors' Amended Motion to Determine Secured

Status of Claim No. 2 of Creditor SunTrust Bank, N.A. ("SunTrust") and to Strip Lien Effective

Upon Discharge or Closing of the Estate (Doc. 42, the "Motion"). SunTrust filed a response in

opposition to the Motion (Doc. 47, the "Response"). On April 8, 2013, the Court held an

evidentiary hearing.

At the conclusion of the hearing, and in lieu of oral argument, the Court directed the parties

to file legal memoranda in support of their respective positions. Such memoranda having been filed

(Docs. 76, 77), the matter is now ripe for the Court's determination. For the reasons stated herein,

the Motion is granted.

I.      Background

On August 27, 2012, the Debtors filed a petition for relief under Chapter 13 of the

Bankruptcy Code.[1] On November 2, 2012, the Debtors converted their case from one under

Chapter 13 to a case under Chapter 7. The Debtors own real property located at 2234 Mourning

Dove Circle, Orange Park, Florida (the "Subject Property"). The Subject Property is encumbered by

two mortgages. The first mortgage is held by GMAC Mortgage Services and, as of the filing date of

---

[1] Unless otherwise indicated, all references to the "Bankruptcy Code" or "Code" are to 11 U.S.C. § 101, *et seq.*, and all references to a "Bankruptcy Rule" or "Rule" are to the Federal Rules of Bankruptcy Procedure.

the Debtors' original petition, had a principal balance owed in the amount of $138,682.[2] The second

mortgage is held by SunTrust and, as of the filing date of the original petition, had a principal

balance owed in the amount of $61,251.46 (Doc. 42 at 2).

On October 19, 2012, a Broker's Price Opinion ("BPO") was prepared by Karen Mather

(Debtors' Ex. 1). The BPO provides a low-high price range for the Subject Property with a

recommended listing price of $121,908 (*id.*). The BPO contains details regarding the properties that

were used as comparisons in determining the recommended listing price of the Subject Property

(*id.*).

At the hearing, Ms. Mather testified on behalf of the Debtors. Ms. Mather testified that,

while she is not a certified appraiser, she is a state licensed real estate agent with twenty years of

experience. Ms. Mather further testified that she is familiar with listings and sales of properties in

the same geographic area as the Subject Property. Ms. Mather stated that the Subject Property was

constructed in 1983 and has not been updated. Ms. Mather noted that, in her opinion, the Subject

Property requires numerous repairs, and that she considers it to be a fixer-upper.[3] The Subject

Property is approximately 2,200 square feet (Debtors' Ex. 1). It is of brick construction and has four

bedrooms and three full bathrooms (*id.*).

In preparing the BPO, Ms. Mather utilized three real property sales in geographic proximity

to the Subject Property (*see id.*). The first property is located at 2806 Navajo Rd., Orange Park,

Florida (the "Navajo Rd. Property"). The second is located at 974 Lakeridge Dr., Orange Park,

Florida (the "Lakeridge Dr. Property"). The third and final property is located at 2756 Richards Rd.,

Orange Park, Florida (the "Richards Rd. Property").

---

[2] This mortgage has since been assigned to Deutche Bank Trust Company Americas (Doc. 42 at 2).

[3] Several photographs of the Subject Property were entered into evidence (Debtors' Ex. 2). Such photographs reveal:
(1) stains on the living room ceiling and great room carpet; (2) vinyl flooring in the kitchen; (3) some damage to the
bathroom sink and shower area; and (4) a wooden, outdoor deck in disrepair (*id.*).

The Navajo Rd. Property was built in 1972 (*id.*). It is of brick construction and has approximately 2,284 square feet of living space (*id.*). Ms. Mather testified that, apart from it being eleven years older than the Subject Property, it is nevertheless a comparable property.

The Navajo Rd. Property contains two and one half bathrooms (*id.*). In addition, it has an in-ground swimming pool, whereas the Subject Property does not (*see id.*). The Navajo Rd. Property sold for $119,000 (*id.*). In order to account for the differences between the Navajo Rd. Property and the Subject Property, *supra*, Ms. Mather made several adjustments to its sale price. For example, she subtracted $8,000 with respect to the in-ground pool and added $1,000 for it having less bathroom space than the Subject Property (*id.*). After making adjustments in price due to the property's differences from the Subject Property, Ms. Mather concluded the comparable sale price of the Navajo Rd. Property is $110,551 (*id.*).

The Lakeridge Dr. Property was built in 1987. It is of brick construction and has 2,094 square feet of living space (*id.*). The Lakeridge Dr. Property has two and one half bathrooms. The Lakeridge Dr. Property sold for $128,600 (*id.*). After making adjustments in price due to the property's differences from the Subject Property, Ms. Mather concluded the comparable sale price of the Lakeridge Dr. Property is $132,572 (*id.*).

The Richards Rd. Property was built in 1977. It is primarily of wood construction, with imitation brick/stone accents (*id.*). It has 2,171 square feet of living space and two bathrooms. In addition, the Richards Rd. Property has: (1) a front porch; (2) a covered patio; (3) a detached shed; and (4) outside lighting (*id.*). The Richards Rd. Property sold for $135,000 (*id.*). After making adjustments in price due to the property's differences from the Subject Property, Ms. Mather concluded the comparable sale price of the Richards Rd. Property is $122,600 (*id.*).

Based upon the foregoing comparable real property sales, Ms. Mather testified that, in her professional opinion, the market value of the Subject Property, as of the petition date of August 27,

2012, is $121,908. Ms. Mather additionally testified that, in her professional opinion, real property located on the side of Doctors Lake Dr. closest to the St. Johns River tends to be more valuable.[4]

W. Scott Lucas testified at the hearing on behalf of SunTrust. Mr. Lucas is a state certified residential real estate appraiser with approximately 30 years of experience. Mr. Lucas testified that, in addition to utilizing comparable real property sales of his choosing, he inspected the properties utilized by Ms. Mather in producing the BPO. Mr. Lucas testified his research revealed that the Navajo Rd. Property and the Lakeridge Dr. Property were bank-owned foreclosure sales, rather than arms-length transactions. Mr. Lucas further testified that he does not agree with Ms. Mather's opinion that real property located on the St. Johns River side of Doctors Lake Dr. would tend to be more valuable.

Mr. Lucas prepared an appraisal of the Subject Property (SunTrust Ex. 1), wherein he estimates its market value to be $150,000. In arriving at this estimation of value, Mr. Lucas utilized three real property sales in geographic proximity to the Subject Property. The first is located at 2962 Shoreward Ave., Orange Park, Florida (the "Shoreward Ave. Property"). The second is located at 3405 Lullwater Ln., Orange Park, Florida (the "Lullwater Ln. Property"). And the third is located at 606 Gulfstream Trail South, Orange Park, Florida (the "Gulfstream Trail Property").

The Shoreward Ave. Property was built in 1979. It is of brick construction and has 2,304 square feet of living space (SunTrust's Ex. 1). The Shoreward Ave. Property has two bathrooms and contains an in-ground swimming pool (*id.*). Pursuant to a short sale, the property sold for $170,000. In order to account for the differences between the Shoreward Ave. Property and the Subject Property, Mr. Lucas made several adjustments to its sale price. For example, he subtracted $7,500 with respect to the in-ground pool, and added $5,000 for it having one less bathroom than the

---

[4] Ms. Mather did not compare the Subject Property to real property sales from the side of Doctors Lake Dr. closest to the St. Johns River.

4

Subject Property (*id.*). Mr. Lucas testified that, after considering these adjustments, *supra*, and the effective age and overall condition of the property, he concluded the comparable sale price of the Shoreward Ave. Property is $151,600.

The Lullwater Ln. Property was built in 1979. It is of brick construction and has 2,231 square feet of living space (*id.*). The Lullwater Ln. Property has two and one half bathrooms and contains an in-ground swimming pool (*id.*). Pursuant to an arm's length transaction, the property sold for $157,000. In accounting for the differences between the Lullwater Ln. Property and the Subject Property, Mr. Lucas made various adjustments to its sale price. He, *inter alia*, subtracted $7,500 for the in-ground pool, and added $2,500 for it having less bathroom space than the Subject Property (*id.*). After considering the effective age and overall condition of the property, Mr. Lucas concluded the comparable sale price of the Lullwater Ln. Property is $141,000 (*id.*).

The Gulfstream Trail Property was built in 1977. It is of brick construction and has 2,153 square feet of living space (*id.*). The Gulfstream Trail Property has two bathrooms and contains a screen patio (*id.*). In addition, the property's kitchen, baths, and roofing have been "completely updated" (*id.*). Pursuant to an arm's length transaction, the property sold for $168,000. In accounting for the differences between the Gulfstream Trail Property and the Subject Property, Mr. Lucas made various adjustments to its sale price (*see id.*). For instance he added $5,000 for it having one less bathroom. In addition, he subtracted $20,000 due to its "good" condition (*id.*). Mr. Lucas concluded the comparable sale price of the Gulfstream Trail Property is $152,300 (*id.*).

Based on the foregoing comparable real property sales,[5] Mr. Lucas testified that, in his professional opinion, the market value of the Subject Property, as of the petition date of August 27, 2012, is $150,000.

---

[5] Both the Shoreward Ave. Property and the Lullwater Ln. Property are located on the side of Doctors Lake Dr. closest to the St. Johns River.

II.     Analysis

The Debtors seek to strip off SunTrust's lien pursuant to 11 U.S.C. § 506(a). That section of

the Code provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has
> an interest . . . is a secured claim to the extent of the value of such creditor's interest
> in the estate's interest in such property . . . and is an unsecured claim to the extent
> that the value of such creditor's interest . . . is less than the amount of such allowed
> claim. Such value shall be determined in light of the purpose of the valuation and of
> the proposed disposition or use of such property, and in conjunction with any
> hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a). Where a lien is "wholly unsecured" it is subject to "strip off" pursuant to 11

U.S.C. § 506(d). *In re McNeal*, 477 Fed. Appx. 562, 563-64 (11th Cir. May 11, 2012) (citing

*Folendore v. United States Small Bus. Admin.*, 862 F.2d 1537 (11th Cir. 1989)). In *In re McNeal*,

the Eleventh Circuit recognized that the United States Supreme Court's reasoning in *Dewsnup v.*

*Timm*, 502 U.S. 410 (1992) may appear to reject the plain language analysis in *Folendore*, but the

Court indicated that there is an important difference between the holding in a case and the reasoning

that supports that holding. *In re McNeal* at 654 (internal quotations and citations omitted).

The Eleventh Circuit found nothing in *Dewsnup* or the Bankruptcy Code that conflicts with

its holding of allowing the strip-off of a wholly unsecured junior lien in a Chapter 7 case. Although

*McNeal* is unpublished and is therefore non-precedential, the Court is nonetheless bound by

*Folendore, supra.* In addition, the Court would note that it gives great weight to rulings by the

Eleventh Circuit Court of Appeals.

After reviewing the appraisal report and the BPO, and after considering the testimony at the

hearing, the Court finds the market value of the Subject Property, as of the petition date of August

27, 2012, to be $135,000. As such, the value of the Subject Property is exceeded by the $138,682

first priority lien of Deutche Bank Trust Company Americas.    Consequently, SunTrust's

subordinate lien is wholly unsecured.  As no equity exists in the Subject Property to support

SunTrust's second priority lien, SunTrust's lien is void pursuant to 11 U.S.C. § 506(d).

<u>III.</u>     <u>Conclusion</u>

Based on the foregoing, it is **ORDERED**:

1.     The Debtors' Amended Motion to Determine Secured Status of Claim No. 2 of

Creditor SunTrust Bank, N.A. and to Strip Lien Effective Upon Discharge or

Closing of the Estate (Doc. 42) is granted.

2.     SunTrust's lien is avoided and extinguished automatically without further Order of

the Court, provided of course that the Eleventh Circuit or the Supreme Court has not

at the time of the discharge vacated or otherwise overruled the holding of *In re*

*McNeal*, 477 Fed. Appx. 562 (11th Cir. May 11, 2012).

3.     SunTrust's claim shall be treated as a general unsecured claim in this case.

DATED this 27 day of June, 2013 in Jacksonville, Florida.

Jerry A. Funk
United States Bankruptcy Judge

Counsel for the Debtors, Roger W. Cruce, Esq., is directed to serve a copy of this Order on all
interested parties and to file a proof of service within three (3) days of the date of this Order.

RECORDED IN THE BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION 7739
U.S. BKL. 564 NO. 7739